**Bernice PIERCE, Plaintiff-Appellee,**

v.

**SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant-Appellant.**

**No. 85–6125.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1986.

Decided July 31, 1987.

---

Charlotte E. Costan, Burbank, Cal., R. Edward Pfiester, Jr., Los Angeles, Cal., for plaintiff-appellee.

Robert S. Wolfe, Los Angeles, Cal., for defendant-appellant.

Before GOODWIN, TANG and FLETCHER, Circuit Judges.

TANG, Circuit Judge:

Southern Pacific (SP) appeals from denial of its motion for judgment notwithstanding the verdict in a suit brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982), by the widow and children of William Pierce, a deceased employee of the railroad. The suit alleged SP's negligence caused Pierce's death, which occurred two days after Pierce was involved in an automobile accident at the railroad yard. Pierce was suspended pending an investigation of an alleged Rule G violation (for drinking on the job). The jury found that SP committed no negligent acts to cause the accident, but found SP was negligent in making the Rule G accusation. SP sought relief based on a view that the jury's findings were inconsistent. We affirm.

## BACKGROUND

At the time of his death on November 8, 1980, William Pierce was 46 years old and had been an employee of SP for 28 years. He died because of a heart attack brought on by stress-related aggravation of a congenital heart disease known as long-QT syndrome. Pierce was unaware of his heart condition.

The events which caused the stress and resultant heart attack occurred two days earlier. On November 6, 1980 Pierce reported to work for the graveyard shift at 11:00 p.m. He was told to take a company

car and go to verify the arrival at the yard of some inbound boxcars. At 11:30 p.m. Pierce collided with a repair cart known as a Kalamazoo. The two vehicles were not seriously damaged but the driver of the Kalamazoo injured his back in trying to jump out of the way of Pierce's approaching automobile, and Pierce hit his face on the steering wheel, causing a severe cut to his lip.

After the collision Pierce said he wanted to continue working but after a delay of approximately thirty minutes he was taken to a hospital where he received emergency room treatment for his cut lip. He refused to have it sutured and was given codeine for pain and an antibiotic. Pierce was picked up at the hospital at 1:30 a.m. and taken back to the SP administration office, although he asked to be taken home. Various company officials questioned him and Pierce filled out a written accident report. At 3:45 a.m. Pierce was officially "taken out of service" and sent home pending a formal investigation of a possible Rule G violation, which forbids alcohol consumption by employees while on duty. Pierce was upset and angry when he returned home, and two days later died of a heart attack.

Pierce's wife and children brought suit under the FELA and the case was tried to a jury along with the suit by Calderon, the driver of the Kalamazoo. Much of the evidence at trial focused on the allegation that Pierce had been drinking prior to the accident. Calderon, who came on shift at the same time as Pierce, said he did not think Pierce had been drinking before work, and members of Pierce's family who were with him until he went to work testified he had nothing to drink. Four witnesses who saw Pierce after the accident testified that they smelled alcohol, but none of the four had included that fact in their written reports of the accident. The physician who treated Pierce in the emergency room said there was no indication of alcohol use, and that if there had been any such signs he would not have prescribed codeine.

At the close of the evidence SP did not move for a directed verdict. The jury was given separate verdict forms for the Calderon and Pierce cases, and SP offered no objections to the verdict forms. The Pierce form included ten interrogatories,[1] which identified various grounds on which SP might have been negligent. The jury found that SP was not negligent in any way that contributed to the accident, and that the accident itself was not a cause of Mr. Pierce's death. However, the jury also found that SP was negligent after the accident, in that Mr. Pierce suffered mental anguish from the accusation of a Rule G violation and being pulled out of service. The jury assessed damages at $425,222 but found Pierce 75% responsible for his injury and death.

---

1. The jury's answers are enclosed in quotation marks.

1. Was the defendant Southern Pacific (through its employee Calderon) negligent in a manner that contributed to the accident that resulted in the injury to Mr. Pierce? "No."
2. Was the defendant Southern Pacific negligent in any other way that contributed to the accident that resulted in the injury to Mr. Pierce? "No."
3. If so, in what respects?
4. Was the injury received by Mr. Pierce in the accident on November 6, 1980, a cause of his death? "No."
5. After the accident, was there any negligent conduct on the part of Southern Pacific employees that constituted a cause of Mr. Pierce's death? "Yes."
6. If so, in what respects? "He suffered mental anguish from the accusation of Rule G and being pulled out of service."
7. What is the monetary value of any pain and suffering experienced by Mr. Pierce as result of the accident? "0."
8. What is the monetary value of the losses that have resulted to the following individuals to date, and those which are reasonably certain to result in the future, because of the death of William B. Pierce:

| For Bernice Pierce: | $ | "396,422" |
| For DeWayne Pierce: | $ | "4,800" |
| For Michelle Pierce: | $ | "12,000" |
| For Michael Pierce: | $ | "12,000" |

9. Was Mr. Pierce negligent in a manner that contributed to his own injury and death? "Yes."

After the jury was discharged, SP filed a motion for a judgment notwithstanding the verdict, (JNOV) Fed.R.Civ.P. 50(b), a motion to alter or amend the judgment, Fed.R.Civ.P. 59(e) or, alternatively, for relief from judgment, Fed.R.Civ.P. 60(b). The district court denied the motions.

## ANALYSIS

SP asserts that it is entitled to have judgment entered in its favor on the ground that the jury's answers are fatally inconsistent or that its post-accident conduct was reasonable as a matter of law.

*Standard of Review*

We review the propriety of a JNOV under the same standard that is applied by the district court. A JNOV is proper when the evidence permits only one reasonable conclusion as to the verdict. We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. A JNOV is improper if reasonable minds could differ over the verdict. *Peterson v. Kennedy*, 771 F.2d 1244, 1252 (9th Cir.1985) (citations omitted), *cert. denied*, —— U.S. ——, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). Denial of a JNOV is inappropriate and must be reversed when it is clear that the evidence and its inferences cannot reasonably support judgment in favor of the opposing party. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

*Procedural Bar to JNOV*

As a threshold question we must determine whether SP waived its right to move for JNOV by failing to move for a directed verdict at the close of the evidence. Fed.R.Civ.P. 50(b); *Farley Transp. Co. v. Santa Fe Transp. Co.*, 786 F.2d 1342, 1345–46 (9th Cir.1985); 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.08 (1986).

The rule that a JNOV may not be granted unless the moving party moved for a

directed verdict at the close of all the evidence is a strict one in cases in which judgment is entered upon a general verdict. The rationale is clearly to prevent a review of the sufficiency of the evidence when the moving party has not given notice, through a motion for a directed verdict, of objections to the legal sufficiencies of the evidence while there is still an opportunity for the opposing party to cure any defects in proof. *Farley Transp. Co.*, 786 F.2d at 1346.

In this case judgment was entered in accordance with a special verdict form prescribed by Fed.R.Civ.P. 49(a), and the motion for JNOV did not allege defects in proof, but rather inconsistencies in the answers given in the special verdict. When a special verdict does not support a judgment a reviewing court may make an exception to the Rule 50(b) requirement of a motion for directed verdict as a prerequisite to a motion for JNOV. *See, e.g., Traders & Gen. Ins. Co. v. Mallitz*, 315 F.2d 171, 175 (5th Cir.1963) (JNOV not barred by failure to move for directed verdict when the jury's special verdict does not support the judgment). Similarly, when a jury's answers are irreconcilably inconsistent, a reviewing court may review whether the answers support the judgment even in the absence of either a motion for directed verdict or a motion for JNOV. *See Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir.1977). The *Mallitz* exception does not apply here, since the jury found SP employees negligent in their post-accident conduct, thus supporting the judgment of liability. But we believe that, just as a motion for directed verdict is not required to preserve the question whether a judgment is supported by the jury's special verdict, a motion for directed verdict need not be a condition precedent for a motion for JNOV when the challenge is to the consistency of the answers under a Rule 49(a) special verdict, and not to the sufficiency of evidence supporting a general verdict.

10. If so, to what extent, in terms of percent, did the negligence of Mr. Pierce contribute

to his own injury and death? "75%."

■ SP argues the jury's answers are fatally inconsistent so that the district court should have granted its motion for JNOV even without a prior motion for directed verdict. Pierce argues that objections to a jury's verdicts—e.g., as inconsistent, unclear or ambiguous—must be made before the jury is discharged. 5A J. Moore & J. Lucas, *supra*, ¶ 49.04 at 49–45. This rule applies to general verdicts under Fed. R.Civ.P. 49(b). Special verdicts, such as the one in this case, are governed by Rule 49(a), which does not require objections before discharge of the jury. *See, e.g. Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 734 F.2d 133, 144–45 (3d Cir.) (no decision of this court has precluded appellate review of inconsistencies under a Rule 49(a) verdict in the absence of objection prior to discharge), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984); *Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 947–48 (5th Cir.1982) (inconsistencies in special verdicts not waived if not raised prior to release of the jury).

*Reconciliation of Conflicting Findings*

■ The court has a duty to reconcile the jury's special verdict responses on any reasonable theory consistent with the evidence. *Gallick v. Baltimore & O. R.R.*, 372 U.S. 108, 119–22, 83 S.Ct. 659, 666–67, 9 L.Ed.2d 618 (1963); *Bourque v. Diamond M. Drilling Co.*, 623 F.2d 351, 353 (5th Cir.1980) (the seventh amendment right to a jury trial requires validation of verdicts if at all possible); 9 C. Wright & A. Miller, Federal Practice and Procedure, § 2513 at 528–29 (1971).

■ The duty to reconcile inconsistencies is particularly strong in a FELA case, because one of Congress' primary concerns in adopting the FELA, was "that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury." *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957). A jury's right to pass upon the questions of fault and causation in FELA actions must be viewed liberally; the jury's power to engage in inferences is significantly broader than in common law negligence actions. *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147, 149 (8th Cir.1982). A reviewing court must uphold a verdict even if it finds only "slight" or "minimal" facts to support a jury's findings of negligence. *Mendoza v. Southern Pacific Transp.*, 733 F.2d 631, 633 (9th Cir.1984).

■ SP contends there is a fatal inconsistency between the findings on the one hand that SP was not negligent in causing the accident (interrogatories 1 and 2), that the injury received in the accident was not a cause of death (interrogatory 4), and that there was no monetary value of any pain and suffering experienced as a result of the accident (interrogatory 7), and the findings on the other hand that SP's negligent conduct after the accident in making a Rule G accusation and pulling Pierce from service constituted a cause of his death (interrogatories 5 and 6). SP's view is that the finding that SP was not negligent in causing the accident necessarily means the jury agreed Pierce was drunk and the sole cause of the accident. Further, if he was drunk, or there was reason to believe he was, the Rule G investigation and release from service were entirely reasonable and could not be considered negligent acts as a matter of law.

We do not agree that there is any inconsistency in the findings because the conclusion that SP was not negligent in causing the accident does not mandate the conclusion that Pierce was drunk. There was considerable evidence that Pierce was not drunk, certainly enough to meet the minimal standards of *Mendoza*, 733 F.2d at 633. There was also evidence on the reasonableness of the questioning session and the temporary suspension. Since under the FELA, reversible error does not occur unless there is a complete absence of probative facts to support the jury's conclusion, *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), the jury's determination cannot be upset.

Although we believe the factual conclusions are not inconsistent and there is sufficient evidence to support the jury's view of

the case, our analysis is not yet complete. SP also argues that a Rule G investigation must be considered reasonable as a matter of law and public policy.

*Rule G Investigation Privilege*

At the outset we note that it is not our practice to reach the merits of a legal argument when the issue has not been preserved for appeal. SP did not offer an instruction to the effect that an employer's conduct in a post-accident investigation is immune from liability, nor did it object to the jury questions which focused on that aspect of SP's alleged negligence. (Interrogatories 5 and 6)

Our reading of Fed.R.Civ.P. 51 is that SP has waived its opportunity to challenge this theory of liability or to interpose an immunity defense by failing to object to the instructions and verdict before the discharge of the jury. *See Brocklesby v. United States*, 767 F.2d 1288, 1293 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986); *Bock v. United States*, 375 F.2d 479, 480 (9th Cir. 1967); 9 C. Wright & A. Miller, *supra,* § 2558 at 672–74 (the Ninth Circuit reads Rule 51 literally).

This court has, on occasion, reviewed a legal question even though there has not been technical compliance with Rule 51, when justice requires. *See, e.g., Brown v. Avemco Inv. Corp.*, 603 F.2d 1367, 1374–75 & n. 4 (9th Cir.1979) (citing cases). When an issue was central to the trial, justice requires review of the treatment of that issue in the instructions as a whole. *Id.* at 1375.

This case was tried on a straightforward theory of negligence. Pierce attempted to prove SP's negligence through the acts of its employee Calderon, through defects in safety of the workplace (inadequate lighting, narrow tow path), and through unreasonable behavior of SP employees during the post-accident investigation. Counsel for Pierce made frequent references to the "degradation and oppression," the offense to his dignity, and the "indignation and humiliation" of keeping Pierce in the office for two hours filling out accident reports after his return from the hospital. Counsel for SP countered that it simply was not negligence to have Pierce fill out forms that must be filled out after an accident. The question ultimately before the jury was whether this manner of conducting an accident or Rule G investigation meets the standard of due care. The trial court gave standard instructions on negligence and the jury decided that the Rule G accusation in this case did not meet that standard.

SP now seeks a ruling that employers engaged in investigations of possibly alcohol-related accidents are immune from liability. To be more precise, SP apparently wishes this court to declare that conducting a Rule G investigation is a privilege which avoids liability. The difference between privilege and immunity is important to our analysis of this legal argument. A privilege avoids liability for tortious conduct under circumstances that make it just and reasonable that liability shall not be imposed, and thus a privilege defeats the existence of the tort. Restatement (Second) of Torts § 10 (1977); W. Prosser & W. Keeton, The Law of Torts § 16 at 108–09 (5th ed. 1984); *Waldon v. Covington*, 415 A.2d 1070, 1077 n. 23 (D.C.1980) (privilege not a defense but a factor in determining prima facie liability). An immunity avoids liability in tort under all circumstances within the limits of the immunity; it is conferred because of the status or position of the defendant and does not deny the tort but the liability. Restatement (Second) of Torts Chp. 45A Introduction at 392; W. Prosser & W. Keeton, *supra* at 109.

SP cannot seriously contend it should have immunity. The FELA

> was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the

injury or death which is the subject of the suit.

*Rogers,* 352 U.S. at 507–08, 77 S.Ct. at 449.

Rather than seeking immunity, SP appears to argue that conducting Rule G investigations should be privileged conduct. SP relies on cases which have explored the defenses of privileged publication available to an employer in an employee suit for slander, *Hall v. Hercules, Inc.,* 494 F.2d 420, 423 (10th Cir.1974), defamation, *Gaines v. Cuna Mut. Ins. Soc'y,* 681 F.2d 982 (5th Cir.1982), or intentional infliction of emotional distress, *Waldon,* 415 A.2d at 1077–78. Even if we agreed that a railroad could claim such a privilege under the FELA, the privilege would not defeat liability as a matter of law. The cited cases all indicate the need to evaluate the facts of the case to determine whether the complained of conduct falls within the scope of the privilege.

In this case, the jury evaluated the evidence of SP's post-accident conduct against a negligence standard and found it wanting. We cannot say, as a matter of law, that this verdict constitutes a miscarriage of justice because any instruction offered to delimit an employer's privileged conduct would necessarily focus attention, as did the negligence instructions, on the reasonableness of the conduct under the circumstances. Whether stated as exceeding the scope of the privilege or falling below the ordinary standard of care, the result in this case would be the same.

We do not decide whether the claimed privilege exists under the FELA because we believe it is up to the Congress to harmonize the competing policy considerations involved in balancing the broad remedial purposes of the Act's protections of railroad employees with the serious public safety concerns which have prompted recent industry efforts to eliminate drug and alcohol abuse by employees. We do not need to decide there is a privilege to decide that on the facts of this case the jury could reasonably have imposed liability even if so instructed.[2]

## CONCLUSION

The judgment of the district court is AFFIRMED.

---

**2.** SP also argues that claims for wholly mental injury should not be compensable under the FELA, despite the Ninth Circuit's contrary decision in *Buell v. Atchison, Topeka & Santa Fe Ry.,* 771 F.2d 1320 (9th Cir.1985), *aff'd in part,* —— U.S. ——, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (declining to decide whether purely emotional injuries are cognizable under the FELA and vacating the Ninth Circuit's judgment and remanding the case on this issue, *id.* at 1417). We need not address this question because this is not a case of pure mental injury, but one in which the negligent conduct of an accident investigation and a decision to pull the victim from service caused him emotional distress. That distress subsequently led to his death from a heart attack, which was a physical manifestation of the extreme stress and distress caused by the Rule G accusation. *See Buell,* 107 S.Ct. at 1418 n. 22.

Finally, SP argues that it is not liable as a matter of law because the "eggshell plaintiff"

rule does not apply in a FELA case based on an underlying injury of emotional distress. This argument is without merit. The Supreme Court has made it clear that FELA jurisprudence gleans guidance from common law developments. *Id.* at 1417 (citing *Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1026, 93 L.Ed. 1282 (1949)). The eggshell plaintiff rule simply means that a tortfeasor takes his victim as he finds him. Clearly the eggshell plaintiff rule applies in cases in which the cause and effect of an injury are physical. *See Lancaster v. Norfolk & Western Ry.,* 773 F.2d 807, 822 (7th Cir.1985). Here the cause of injury was emotional but the plaintiff suffered a physical condition, long-QT syndrome, that made him unusually susceptible to the emotional injury. When an emotional injury causes physical manifestations of distress we can see no principled reason why the eggshell plaintiff doctrine should not apply.