**GROSVENOR PROPERTIES LTD., a California corporation; Grosvenor Ventures Ltd.; L.P.V. Hotels Ltd., Plaintiffs–Appellees,**

v.

**SOUTHMARK CORPORATION; Southmark Vancouver Corporation, Defendants–Appellants.**

**GROSVENOR PROPERTIES LTD., a California corporation; Grosvenor Ventures Ltd.; L.P.V. Hotels Ltd., Plaintiffs–Appellants,**

v.

**SOUTHMARK CORPORATION, et al., Defendants,**

and

**William S. Friedman, Defendant–Appellee.**

**Nos. 87–2829, 88–1631 and 87–2877.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1989.

Notice of Automatic Stay July 14, 1989.

Order Vacating Automatic Stay Jan. 10, 1990.

Decided Feb. 8, 1990.

Charles S. Treat, Latham & Watkins, Los Angeles, Cal., for defendants-appellants.

Neil E. Falconer, Steinhart & Falconer, San Francisco, Cal., for plaintiffs-appellees-cross-appellants.

Before TANG, CANBY, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Southmark Corporation (Southmark) appeals the district court's judgment against it following a jury trial in which Southmark was found to have fraudulently misappropriated the benefits of an agreement to form a joint venture between Southmark and Grosvenor Properties (Grosvenor). Grosvenor cross-appeals a directed verdict in favor of William Friedman, vice chairman of Southmark.

Grosvenor and Southmark entered into a joint venture agreement to purchase real estate in British Columbia. It was contemplated that Grosvenor would manage the hotels acquired pursuant to this agreement. A series of negotiations on various aspects of the deal was conducted in Vancouver on November 18 and 19, 1985. These negotiations involved representatives of Southmark, Grosvenor, the potential seller and several brokers. Werby, the president of Grosvenor, called from San Francisco to tell his representative to insist that the seller make certain concessions. If these concessions were not forthcoming, Werby directed his representative to abandon the deal. This same information was conveyed to one of the seller's brokers in a phone call by Werby. Grosvenor suggests that despite these instructions, Werby had no intention of abandoning the deal, but was merely engaging in a negotiating ploy.

After Grosvenor's ultimatum was rejected by the seller, Grosvenor's representative wrote out and showed (but did not deliver) to Southmark's representative a letter stating that Southmark was free to negotiate a

deal for itself. Southmark's representative then met with the seller's representative, and discussed a possible deal excluding Grosvenor.

That afternoon, a four-way call occurred, involving Werby, Friedman, and their representatives in Vancouver. During this call, Werby stated that he did not wish to abandon the deal. Southmark subsequently sent a letter to Grosvenor which contained an offer to allow Grosvenor to participate in the acquisition if Grosvenor were willing to abandon its claims to manage the hotels. Grosvenor refused, and Southmark later completed the purchase of the real estate.

Suit was brought by Grosvenor alleging breach of contract, bad faith denial of contract and breach of fiduciary duty. Friedman was also named as a defendant. An eleven day jury trial followed. At the close of the presentation of evidence, the district court granted the motion by defendant Friedman for a directed verdict on the ground that an officer of a defendant corporation acting within the scope of his authority cannot be held liable for conspiring with the corporation to commit a breach of fiduciary duty of the corporation. The district court also directed a verdict for Southmark on the charge of bad faith denial of contract, holding that no such cause of action exists under Canadian law.

The jury found that the termination of the joint venture agreement was caused by the conduct of Grosvenor. Nevertheless, the jury found that Southmark breached its fiduciary duty to Grosvenor by fraudulently misappropriating the benefits of the joint venture agreement. The jury awarded compensatory damages of $4,566,250 to Grosvenor. The court awarded an additional $64,422.25, representing prejudgment interest.

The district court denied Southmark's motions for judgment notwithstanding the verdict and for a new trial. Southmark appeals, arguing that the district court judge misinterpreted the relevant law, misinstructed the jury and that the jury's verdicts were inconsistent in light of the governing law.

I

Grosvenor argues that Southmark has waived its objections to the instructions by failing to raise them prior to the withdrawal of the jury. We agree.

A

■ Federal Rule of Civil Procedure 49(b) governs inconsistencies in special verdicts; objections before the withdrawal of the jury are not required.[1] *See Pierce v. Southern Pac. Trans. Co.*, 823 F.2d 1366, 1370 (9th Cir.1987).[2] We must reconcile the jury's verdict responses by the use of any reasonable theory consistent with the evidence. *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 119–22, 83 S.Ct. 659, 666–68, 9 L.Ed.2d 618 (1963). Grosvenor asserts that although the verdicts are inconsistent by reference to the correct interpretation of the governing law, the verdicts are consistent when viewed, as they must be, in light of the instructions given. *See Toner v. Lederle Laboratories*, 828 F.2d 510, 512 (9th Cir.1987), *cert. denied*, 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988). We agree.

The district court did not instruct the jury that if it found that Grosvenor breached the joint venture agreement, it could not go on to find that Southmark violated its fiduciary duty to its partner. Rather, the court indicated that breach of the joint venture and breach of fiduciary duty were two alternative theories of liability.

The verdict form given to the jury specifically set forth these two theories as alternatives, asking:

1. Was the termination of the Agreement to Form A Joint Venture caused by

---

1. Despite Grosvenor's arguments to the contrary, it seems clear that the district court both intended and understood the jury decision to be in the form of special verdicts.

2. We note in passing that the *Pierce* case was rejected on other grounds by *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990).

the conduct (as "conduct" is defined in the jury instructions) of:

| | or | |
|---|---|---|
| Plaintiffs | | Defendants |

2. Did defendants breach a fiduciary duty to plaintiffs by fraudulently misappropriating the benefits of the Agreement To Form A Joint Venture?

Yes/No

The jury answered question 1 by entering an "X" above "Plaintiffs." Question 2 was answered "Yes." In addition, Judge Legge told the jury that "if you have found in favor of the plaintiffs on *one* of [the first two questions], then you go on to the next question [of proximate causation]" (emphasis added). These statements clearly imply that under the instructions given, the jury could find (as in fact it did) that Southmark breached a fiduciary duty to Grosvenor, even if the jury concluded that Grosvenor's conduct terminated the joint venture agreement. The district court made it clear that this was its interpretation of the law, when, in rejecting Southmark's motion for judgment notwithstanding the verdict, the court stated explicitly that these were "alternative theories of recovery which were not necessarily inconsistent." [3]

In view of the instructions indicating that there were two alternative theories of liability from which the jury could choose, the verdicts were not inconsistent, rendering Rule 49 inapplicable. Southmark's argument, that it did not waive its objection to the verdicts because Rule 49 does not require objection before the jury withdraws, is not applicable on the facts of this case.

---

**3.** The conclusion that the verdicts are consistent is not undercut by the district court judge's instructions on the breach of fiduciary claim:

[T]he parties agree that there was an agreement to form a joint venture, and the parties agree that the joint venturer is owed duties of good faith and fair dealing and full disclosure. It's a reciprocal mutual obligation. You're going to have to decide if the defendants breached that duty by fraudulently misappropriating the benefits of the joint venture *or whether plaintiffs words or conduct consented that the joint venture was over and the defendants could go ahead and attempt to buy the hotels.*

**B**

■ Federal Rule of Civil Procedure 51 states that *no party may assign as error the giving or failure to give an instruction unless that party specifically objects to that instruction before the jury retires.* *See* Fed.R.Civ.P. 51. Southmark argues that it made the required specific objection to the instruction that failed to state that termination of the joint venture would end fiduciary duty, and that submitted alternative theories of liability to the jury by way of special verdict questions. It contends that it did so by its submission of proposed jury instruction 22. In addition, at a sidebar conference called to consider corrections and additions to the instructions, Southmark's counsel stated that instruction 22 had not been given and the court responded that it had rejected that instruction. At that same conference the court noted that it was not necessary for counsel to repeat previously submitted instructions or objections.

However, this sequence of events is not sufficient to constitute a sufficient objection to the instructions that were given, as Rule 51 is applied in this circuit. This court has held that remarks made by counsel in chambers, discussion of law in pretrial memoranda and mere submission of proposed instructions did not clearly show that the issue was focused before the court. *Bertrand v. Southern Pac. Co.*, 282 F.2d 569, 572 (9th Cir.1960), *cert. denied*, 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961); *see also Johnston v. Pierce Packing Co.*, 550 F.2d 474, 479–80 (9th Cir.1977).

---

(emphasis added). The highlighted passage could be interpreted to suggest that the court instructed the jury that the duties of a joint venturer did not survive the termination of the joint venture by the other party. However, the instructions do not appear to require that "consent" be understood as identical with "failure to breach." In other words, it was possible for the jury to find that despite a prior breach by Grosvenor, Grosvenor did not "consent" to the termination of the joint venture, making the verdicts consistent under the instructions.

In addition, an examination of proposed instruction 22 suggests that it was not sufficient to state distinctly the matter objected to and the ground of the objection as required by Rule 51. *Compare Brown v. Avemco Inv. Corp.,* 603 F.2d 1367, 1371 (9th Cir.1979) (where instruction *was* sufficient to focus issue before the jury). The proposed instruction reads:

> In order to recover for breach of fiduciary duty for misappropriation of the fruits of the joint venture, Grosvenor must prove that the joint venture was still actively pursuing the purchase of the hotels when Southmark began negotiations with the seller.

This instruction does not go to the issue at the core of this appeal, that is, does the fiduciary obligation of a nonterminating partner survive termination by the other partner? In fact, this proposed instruction might be plausibly read to state that no matter which party breached, unless the joint venture was actively pursuing the purchase at the time Southmark began negotiations, there could be no liability. Southmark offers no authority for such a specific requirement, and the trial court properly declined to give its instruction. In addition, the content of the instruction makes clear that its proffer by Southmark does not constitute a sufficient objection under Rule 51 to the instructions that were given.

## II

The district court directed a verdict in favor of Friedman, stating that under the facts of the case, neither California nor Canadian law permit a finding of liability against a corporate officer acting within the scope of his employment. In its cross-appeal, Grosvenor contends that the district court erred in its analysis. We disagree and determine that the district court correctly applied applicable law.

In reviewing a directed verdict, the court must view the evidence in the light most favorable to the nonmoving party and draw all possible inferences in favor of that party. *Blanton v. Mobil Oil Corp.,* 721 F.2d 1207, 1219 (9th Cir.1983), *cert. denied,* 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985). A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. *Peterson v. Kennedy,* 771 F.2d 1244, 1256 (9th Cir. 1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).

Grosvenor alleges that Friedman conspired with Southmark and aided and abetted its wrongful misappropriation of the fruits of a joint venture. Although Grosvenor concedes that under applicable law a corporate officer has no vicarious liability for torts of his employer, nor for inducing breach of contract, it contends that Friedman's active participation in Southmark's fraudulent conduct rendered him independently liable. We analyze this claim under both Canadian and California law.

### A

■ Under Canadian law, an employee acting in good faith within the scope of employment is not personally liable for inducing a breach of contract by the employer with a third party. *Einhorn v. Westmount Inv.,* 11 D.L.R.3d 509, 511 (Sask. Court of Appeal 1970); *Neyland v. Genstar,* 76 D.L.R.3d 697, 701–02 (B.C.S.Ct. 1977). However, where the evidence shows that an employee acts in bad faith or fraudulently, liability may be found. *See Einhorn,* 11 D.L.R.3d at 511; *Neyland,* 76 D.L.R.3d at 701. Southmark contends that "good faith" refers to an employee's action toward his employer, that is, he must be acting for his employer's benefit. While both *Neyland* and *Einhorn* are somewhat obscure on this point, our analysis of these cases supports Southmark's position. Thus, under Canadian law, the district court was correct in directing a verdict for Friedman, as there is no contention that he acted *mala fides* as regards Southmark's interests.

### B

■ Under California law where a corporation's directors are not named as parties to a contract, they are not subject to an independent duty to the corporation's con-

**1154**

tractual partner, and thus cannot be held liable on a conspiracy theory for breach of the corporation's duties. *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576, 510 P.2d 1032, 1038–39, 108 Cal.Rptr. 480, 486–87 (1973). Similarly, a corporation's employees owe no independent fiduciary duty to a third party with whom they deal on behalf of their employer. *United States Liab. Ins. Co. v. Haidinger–Hayes, Inc.*, 1 Cal.3d 586, 594–95, 463 P.2d 770, 775, 83 Cal.Rptr. 418, 423 (1970); *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785, 598 P.2d 45, 52, 157 Cal.Rptr. 392, 399 (1979). We therefore find that Friedman owed no independent duty to Grosvenor and that the district court correctly determined that Friedman was not liable for any tort in connection with his actions in regard to Grosvenor.

### III

The district court awarded Grosvenor $635,073.47 in fees and costs. Although Southmark appealed from this award below, it offers no argument on appeal as to their impropriety. We therefore affirm the district court's award. Grosvenor also seeks attorneys' fees on appeal. Paragraph 16.10 of the joint venture agreement states that a prevailing party is entitled to receive "all costs and expenses, including reasonable attorneys fees." As we determine that Grosvenor prevails on appeal, except as to its cross-appeal from the directed verdict in favor of Friedman, we grant its request for fees in defending Southmark's appeal and remand for a determination of the amount of such fees.

AFFIRMED.