AUSTIN–WESTSHORE CONSTRUCTION CO., INC., Plaintiff–Counterclaim Defendant–Appellee, Cross–Appellant,

v.

FEDERATED DEPARTMENT STORES, INC., Defendant–Counterclaim–Plaintiff–Cross–Claim Plaintiff–Third Party Plaintiff–Appellant, Cross–Appellee,

Seaboard Security Co., Counterclaim Defendant, Cross–Claim Defendant–Appellee,

The Poole and Kent Company, a Maryland corporation, Intervening Claimant–Appellee, Cross–Appellant,

The Edison Shopping Center, et al., Third–Party Defendants,

George Sanders, Stuart Marcus, and Mary Joe Sanders, Third–Party Defendants–Appellees.

No. 88–3744.

United States Court of Appeals, Eleventh Circuit.

July 1, 1991.

---

Frederick L. Wright, II, Patrick A. Thompson and James E. Stephenson, Atlanta, Ga., for Federated Dept. Stores, Inc.

Joseph H. Varner, Michael A. Fogarty, Tampa, Fla., for Edison Shopping Center et al. and Sanders, et al.

Steven T. Northcutt, Tampa, Fla., for Austin–Westshore.

Richard Fred Lewis, Miami, Fla., for Poole & Kent.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

This is an appeal from the trial court's June 30, 1988 orders on the various post trial motions filed by the parties. This complex case sounding in negligence and breach of contract involved the construction of a Burdine's department store building in Ft. Myers, Florida during the late 1970's. Because we find error in the trial court's rulings, for the reasons stated below, we reverse in part and affirm in part.

## I.

### BACKGROUND

#### A. *The Parties*

The claims in this case relate to the construction of a large department store building operated by Burdine's. Appellant/Cross-Appellee, the owner of the building at the time of the trial was Federated Department Stores, Inc. ("Federated"). During the relevant time periods, Federated operated a division called Burdine's. Appellee/Cross-Appellant, the general contractor for the construction of the building was Austin–Westshore Construction Company, Inc. ("Austin–Westshore"). Appellee/Cross–Appellant Seaboard Surety Company ("Seaboard") was Austin–Westshore's performance bond surety. Appellee/Cross–Appellant Poole & Kent Company was the mechanical contractor. The developers of the Edison Mall Shopping Center, where the Burdine's was being built, were also involved in the trial proceedings ("Developers").

#### B. *Facts*

In June of 1978, Federated and Austin–Westshore entered into a contract involving the construction of a Burdine's department store building to be owned and operated by Federated in Fort Myers, Florida. As designed the building was to comprise two stories, with the structural capability for the addition of a third floor. Under the contract, Austin–Westshore was to build the structure and exterior of the building. Federated already had subcontracts for the electrical, mechanical and plumbing installations. These subcontracts were "assigned" to Austin–Westshore for coordination. Federated was to be responsible for the interior "build-out." Construction was to commence in July of 1979 and be completed one year later. Federated was to receive beneficial use of the store in six months, so that it could finish the interior in time for its scheduled August 1, 1979 opening.

For one reason or another, delays plagued the project from the start. Early on in the construction, Austin–Westshore complained to Federated that active sewer and storm water lines underneath the northern side of the building site, and a live power line along its east boundary, threatened Austin–Westshore's construction schedule. Federated's operating agreement with the Developers required the Developers to remove the sewer, storm water and power lines before the construction began. These items were not removed until long after the project began. Despite these and other delays, the store was substantially completed in time for the August 1, 1979 opening.

#### C. *Procedural Background*

In April of 1980, Austin–Westshore filed suit against Federated in a Florida state court asserting claims for breach of contract and delay damages owed for construction of Federated's Burdine's department store in Fort Myers, Florida. Federated removed the action to the United States District Court for the Middle District of Florida and filed an answer denying liability. Federated also filed a counterclaim against Austin–Westshore asserting

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

breach of contract and negligence for damages allegedly suffered as a result of Austin–Westshore's failure to construct the building in conformance with the contract requirements, industry standards, and/or the local building code. Added to Federated's counterclaim was Austin–Westshore's performance bond surety, Seaboard, who guaranteed Austin–Westshore's proper performance on the building of this particular Burdine's department store.

Federated later filed a third-party action against the Developers of the shopping mall where the store was built, contending that if Austin–Westshore was damaged by delays, those delays and damages were caused solely by the actions of the Developers. Federated claimed that the Developers breached their duties to Federated and therefore should be liable for any sums recovered by Austin–Westshore from Federated.

The mechanical contractor, Poole & Kent intervened in the action claiming damages for delays and overruns from Austin–Westshore, Seaboard, and Federated, and for alleged nonpayment for work performed under its subcontract. Federated then filed a supplemental counterclaim against Austin–Westshore and Seaboard asserting that Austin–Westshore and Seaboard were directly liable for any sums due Poole & Kent or, in the alternative, that if Federated was found liable on Poole & Kent's claims, then Austin–Westshore and Seaboard were liable to Federated for the same amount.

The parties consented to proceed before a United States Magistrate. The jury trial commenced on May 11, 1987 and lasted for almost two months. The jury returned its verdict on July 2, 1987. As to Federated's claims, the jury found in favor of Federated on some of its negligence claims. Specifically, the jury found that Federated was entitled to recover against Austin–Westshore and Seaboard for negligent construction of the following items: exterior concrete walls, foundations, store entrances, footings and structural members of the building. The jury determined that the amount of damages as to these items to-

taled over 6.7 million dollars. The jury in following the special interrogatories applied the "economic waste" measure of damages to Federated's recovery which had the effect of reducing Federated's damages to $1,564,546.79. The jury also found that Federated was not entitled to recover damages against Austin–Westshore and Seaboard for breach of contract except for a claim for the cleaning of the building after construction.

The jury found in favor of Austin–Westshore on several claims and awarded Austin–Westshore the following amounts: $282,011.46 for the unpaid contract balance, $19,176.55 for extra skirts for canvas canopies and additional guard services, and $102,000.00 on its delay/acceleration claim. The jury found that Austin–Westshore was not entitled to recover on any of its claims for extra work. The jury also found that Federated should not recover any of the amount awarded to Austin–Westshore from the Developers.

As to Poole & Kent, the jury found that Poole & Kent was entitled to recover against Austin–Westshore and Seaboard on the unpaid contract balance. As to the delay claims, the jury found that Poole & Kent was entitled to recover against Federated on its delay claims. In addition, the jury found that Austin–Westshore, Seaboard, Federated, and the Developers were all partially responsible for Poole & Kent's delay damages, but the verdict form did not ask the jury to apportion the percentage of responsibility between the parties.

The trial court entered judgment on February 5, 1988, awarding $1,522,277.32 in damages plus attorneys' fees and costs of $190,284.67 to Federated and awarding $731,195.26 in damages and pre-judgment interest to Austin–Westshore. The trial court also entered final judgment in favor of Poole & Kent and against Austin–Westshore and Seaboard in connection with Poole & Kent's claims for unpaid contract balances in the amount of $56,307.67. A second final judgment was entered in favor of Poole & Kent against Federated in connection with the delay claims in the amount of $63,863.96. Poole & Kent's judgment

amounts were based upon stipulated and agreed damages among all the parties as to the claims of Poole & Kent for the separate items of unpaid contract balances and delay damages.

Federated, Austin–Westshore and Seaboard all filed post trial motions. By various orders dated June 30, 1988, the trial court ruled on the post trial motions. The trial court granted Austin–Westshore's judgment notwithstanding the verdict ("JNOV") motion with respect to Federated's negligence claims relating to negligent construction of the building. The trial court granted Federated's JNOV motion on its breach of contract claim except for that portion of the claim concerning the exterior walls. The trial court denied Federated's request that its damages be those determined by the jury without the application of "economic waste," and refused to strike Austin–Westshore's delay claim. The trial court granted Federated's JNOV motion against Poole & Kent entering an amended final judgment against Poole & Kent on its claim for delay damages. All post trial claims not addressed in the order were denied. The June 30, 1988 order also reflected the amended damages awarding $731,195.26 in damages to Austin–Westshore and $834,939.61 in damages plus $104,367.45 in attorneys' fees to Federated.

## II.

### DISCUSSION [1]

#### A. *The Verdict Form—49(a) or 49(b)*

As a threshold question we must determine whether the verdict form submitted to the jury was a special verdict under Rule 49(a) or a general verdict accompanied by answers to written interrogatories under Rule 49(b). The record is entirely unclear on this point necessitating our attention to this issue before further analysis.

Under the special verdict, Rule 49(a), "the court is given the authority to dispense with the general verdict altogether, and to submit the various fact issues in the

case to the jury in the form of individual fact questions, on each of which the jury is to return a special verdict." 9 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 2501 at 484 (1971). "Today, under the special verdict system, the jury makes formal findings on issues of ultimate fact and the court applies the law." *Portage II v. Bryant Petroleum Corporation,* 899 F.2d 1514, 1520 (6th Cir.1990) (citations omitted).

Rule 49(b), as opposed to Rule 49(a), allows the court to submit a general verdict accompanied by written interrogatories, on one or more issues of fact. 9 C. Wright & A. Miller, § 2511 at 521; Fed.R.Civ.P. 49(b). "The general verdict with interrogatories affects the *weight* given to certain factors; it requires the jury 'to give close attention to the *more important* issues and their answers serve to check the propriety of the general verdict.' " *Portage II,* 899 F.2d at 1520 (quoting 9 C. Wright & A. Miller, § 2511, at 521).

The trial court's use of the term "special interrogatories" in the order dated June 30, 1988 does not provide guidance in our resolution of this issue. Page 8 of the June 30, 1988 order, refers to the special interrogatories in regard to a case involving a verdict under Rule 49(a). On the other hand, page 26 of the order refers to special interrogatories citing a case involving a verdict under Rule 49(b). Mere use of the term special interrogatories does not put the verdict in this case into the category of a special verdict. The two are quite distinguishable as explained by one commentator:

A special verdict is one in which the jury finds all the facts and then refers the case to the court for a decision on those facts. It is rendered in lieu of a general verdict and contains findings on all material issues in the case. Special interrogatories, on the other hand, are propounded as to the selected issues of fact, and answers to them always, or at

---

**1.** The parties raised numerous issues in this appeal and we only address those issues worthy of discussion.

least normally, given in connection with, not in substitution of, a general verdict. Annotation, *Submission of Special Interrogatories in Connection with General Verdict under Federal Rule 49(b), and State Counterparts*, 6 A.L.R.3d 438, 440 (1966).

After careful consideration of the written questions presented in the jury verdict form, the form on which they were presented,[2] and the issues they were designed to resolve, it is clear that a general verdict accompanied by interrogatories as authorized under Rule 49(b) was presented to the jury.

**B.** *Procedural Bar to Raising the "Economic Loss"[3] Theory For the First Time in the JNOV Motion*

Having determined that this is a 49(b) verdict, we next address the issue of whether Austin–Westshore and Seaboard waived their right to move for JNOV on the economic loss theory by failing to move for directed verdict on that issue at the close of the plaintiff's case or at the close of all the evidence. Federated contends that Austin–Westshore and Seaboard were procedurally barred from raising the economic loss theory for the first time in the motion for JNOV. We agree and reverse on this issue reinstating the jury's finding of liability on the negligence theory.

■ The present analysis begins with the core principle that a court can only consider a JNOV motion if the moving party has previously made a motion for a directed verdict at the close of all the evidence. *Fed.R.Civ.P.* 50(b); 5A J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE 50.08 (2d ed. 1989); *Rawls v. Daugh-*

*ters of Charity of St. Vincent DePaul, Inc.*, 491 F.2d 141, 147 (5th Cir.), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 307 (1974)[4]; *Pierce v. Southern Pacific Transport Company*, 823 F.2d 1366, 1369 (9th Cir.1987). Parties who fail to raise certain issues in their motion for directed verdict are precluded from raising such issues in their JNOV motion. *Sulmeyer v. Coca–Cola Company*, 515 F.2d 835 (5th Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976). This rule is especially strict in cases in which judgment is entered upon a general verdict. *Pierce v. Southern Pacific Transport Company*, 823 F.2d at 1369.

> The rationale is clearly to prevent a review of the sufficiency of the evidence when the moving party has not given notice, through a motion for a directed verdict, of objections to the legal sufficiencies of the evidence while there is still an opportunity for the opposing party to cure any defects in proof. (citation omitted).

*Id.*

■ Despite not raising the application of the economic loss rule prior to their JNOV motion, Austin–Westshore asserts that due to the recent decisions of the Florida Supreme Court in *Florida Power & Light* and *AFM Corporation*,[5] the negligence verdict for Federated must be overturned. The trial court was persuaded by this position and granted Austin–Westshore motion for JNOV on this issue. A careful reading of these Florida Supreme Court cases, however does not support Austin–Westshore's position.

The economic loss rule is not a new intervening change in the law which compels

---

**2.** The verdict form was entitled "VERDICT."

**3.** The "economic loss" theory essentially stands for the proposition that contract principles are more appropriate than tort principles for the resolution of claims involving economic loss.

**4.** The Eleventh Circuit in the in banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**5.** These cases, before the Florida Supreme Court on certified questions from the Eleventh Circuit, essentially hold that without some conduct resulting in personal injury or property damage, there can be no independent tort flowing from a contractual breach which justifies a tort claim solely for economic losses. *AFM Corp. v. Southern Bell Telephone and Telegraph Company*, 515 So.2d 180, 181–182 (Fla.1987) (concerned the purchase of services); *Florida Power & Light v. Westinghouse Electric*, 510 So.2d 899, 901 (Fla. 1987) (concerned the purchase of goods).

the trial court to overturn the negligence verdict. The Florida Supreme Court case of *Florida Power & Light v. Westinghouse Electric Corporation,* 510 So.2d 899, 902 (Fla.1987), decided shortly after the verdict, held that "the economic loss rule approved in this opinion is not a new principle of law in Florida and has not changed or modified any decisions of this Court." In fact, prior to the Florida Supreme Court's *Florida Power & Light* case, the Florida District Courts of Appeal were split on this very same issue. Florida's First and Third District Courts of Appeal precluded recovery in negligence for economic losses arising from a breach of contract. *Monsanto Agricultural Products v. Edenfield,* 426 So.2d 574 (Fla.Dist.Ct.App.1982); *GAF Corporation v. Zack,* 445 So.2d 350 (Fla. Dist.Ct.App.1984). Florida's Second District Court of Appeal held otherwise. *Safeco Title Insurance Co. v. Reynolds,* 452 So.2d 45 (Fla.Dist.Ct.App.1984); *Navajo Circle, Inc. v. Development Concepts Corp.,* 373 So.2d 689 (Fla.Dist.Ct.App. 1979). Based on the split in authority at the time and the fact that the issue was then pending before the Florida Supreme Court on certification, Austin–Westshore clearly had ample tools available to assert this defense pretrial or during the trial.

In order to apply the economic loss rule which had not been raised prior to the motion for JNOV, the trial court had to get around the procedural requirements associated with Rule 50(b). In an attempt to achieve this end, the trial court stated on page 8 of its order dated June 30, 1988 that:

> Rule 50(b), however, does not bar a motion for judgment n.o.v. in circumstances where, as here, special interrogatories were returned by the jury and the issue raised in the motion is not the sufficiency of the evidence but the proper judgment to be entered upon the special verdict. *Traders & General Insurance Company v. Mallitz,* 315 F.2d 171, 175 (5th Cir.1963).

However, the trial court's reliance on *Mallitz* is misplaced. *Mallitz* involved a Rule 49(a) special verdict and not a Rule 49(b) general verdict accompanied by answers to interrogatories, as is present in this case. This distinction is crucial as applied to the Rule 50(b) procedural requirements. Therefore, the holding in *Mallitz* simply does not apply to a Rule 49(b) situation. *Porter v. Eckert,* 465 F.2d 1307, 1309 (5th Cir.1972).

A close reading of *Mallitz* confirms our understanding of why such an exception need be made in a special verdict situation. There was really no function for the directed verdict in *Mallitz,* since under Rule 49(a), the jury merely finds certain facts and the rest of the case is submitted to the judge. The issue which the *Mallitz* court allowed to be brought up for the first time on JNOV went to the judgment based on the facts which the jury found in the special verdict and did not involve factual inconsistencies or the position that no reasonable jury could have found those particular facts.

Consequently, the only way the economic loss issue can be entertained for the first time on JNOV is if there is some fundamental miscarriage of justice or fundamental error involved. *Wilson v. Attaway,* 757 F.2d 1227, 1237 (11th Cir.1982). We find no such fundamental error in permitting the damages involved in this case as these damages were entirely appropriate under the contract theory.

Concluding this to be a Rule 49(b) situation and otherwise absent any fundamental error, Austin–Westshore and Seaboard waived their right to move for JNOV on the economic loss theory by failing to move for directed verdict on that issue at the close of the plaintiff's case or at the close of all the evidence.

C. *Error in Entering the Amount of Damages the Jury Found on the Negligence Claim to the Contract Claim*

■ After overturning the jury verdict in favor of Federated on its negligence claim, the trial court granted Federated's reciprocal motion for JNOV on the contract claim. With respect to the contract claim for damages to the foundation and the store entrances, the trial court held that

the amount of damages will be determined from the amounts awarded on the negligence claim. As authority to enter judgment on the contract claim, the trial court quoted the proposition that "[a] district court may, within its discretion, amend a special verdict after it is rendered to make it conform to the jury's obvious, but unexpressed intention." *Aquachem Company, Inc. v. Olin Corporation,* 699 F.2d 516, 520 (11th Cir.1983).

Once again, the trial court is under the misimpression that this case involved a special verdict and not a general verdict accompanied by special interrogatories.[6] The holding in *Aquachem Company* must be limited to special verdicts under Rule 49(a) where the jury makes findings of fact and the court applies the law.[7] Consequently, this being a 49(b) verdict, such discretionary amendment is not present.[8] We do not embrace the trial court's reasoning in this regard and must reverse the granting of JNOV on Federated's contract claim.

D. *The Economic Waste Issue was Properly Applied By the Jury with Respect to Federated's Damages*

■ The economic waste measure of damages applies to situations in which the costs of repairing the deficiencies in a building are grossly disproportionate to the value of the completed structure. In such circumstances, damages can be measured by the difference in value of the structure contracted for and the structure received as opposed to the cost of correcting the deficiencies. The economic waste measure of damages clearly contemplates that one of the contracting parties did not receive what was contracted for and to insist on such compliance under the circumstances would be unreasonable and economically

wasteful. The jury was instructed on this alternative measure of damages:

The usual measure of damages for defective construction of a building due to breach of contract or negligence includes, in addition to other items of damages which may be proved, the reasonable cost of repair and completion of the building in accordance with the original contract design. There is an exception to this rule, however, if the cost necessary to repair or replace the defective construction is grossly disproportionate to the results to be obtained and the building is not required to be repaired as a result of an unsafe condition.

Thus, if you find that corrections in the work involve **an unreasonable destruction of the structure and**[9] a cost which is grossly disproportionate to the results to be obtained, and that the building is not required to be repaired due to an unsafe condition, then the amount of damages is the difference between the value of the building contracted for and the value of the defective building actually received.

■ Federated first contends that the "economic waste" measure of damages should not have been given to the jury in this case asserting that the trial court ignored the contract between the parties which includes terms allowing for a cost of repair as the appropriate measure of damages. While it is true that parties had contractual rights regarding how damages are to be measured in the event of a breach, the contract remedy is binding only when reasonable. *See Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 929 n. 10 (5th Cir.1976). The qualification of reasonableness also underlies the economic waste measure of damages. *See generally,* 17 Fla.Jur.2d Damages § 29 (1980).

---

**6.** See section II subsection A for an explanation on special verdicts versus general verdicts accompanied by special interrogatories.

**7.** Rule 49(a) provides that "[a]s to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

**8.** We recognize that there are many caveats to such discretionary amendment under Rule 49(a). Moreover, we do not imply that such amendment would be utilized even if this case involved a 49(a) special verdict.

**9.** The trial judge had a concern about this highlighted phrase and read this instruction to the jury at a later time without the highlighted phrase.

Federated also contends that the economic waste principle should only be applied in situations involving more extensive destruction than would be required to implement the repairs in this case. However, we find this argument to be without merit. The jury was in the best position considering the extensive evidence presented on the damages issue to determine whether the economic waste measure of damages should apply to this case.

In addition, Federated makes an unconvincing argument that the economic waste principle is inapplicable because of the testimony during the trial that the building presented safety concerns. The jury obviously rejected the argument that such safety concerns or alleged safety violations were "unsafe" for the purposes of applying the economic waste concept. This determination was clearly left for the jury to determine and we will not allow Federated to substitute its version of the evidence for the jury's version.

Next, Federated takes issue with the court's instruction on economic waste asserting that the instruction misled the jury and was confusing when combined with the court's interrogatories. Federated points out that the jury instruction on economic waste required an application of the amount of damages in the difference between the value of the building contracted for and the value of the defective building actually received. This "value of the building" concept is asserted to not have carried over to the verdict forms which required the jury to apply the economic waste standard to the foundations and the walls, instead of the building as a whole. However, the jury's responses to the special interrogatories were not misleading and intended to indicate the loss in value of the building as a whole as was attributed to the various defects. Finding Federated's other arguments on the economic waste issue unpersuasive, we hold that the economic waste measure of damages was correctly applied by the jury as an alternative measure of damages.

## E. *Delay Claims by Poole & Kent*

Cross-appellant Poole & Kent takes issue with the trial court's post trial ruling granting Federated's JNOV motion against Poole & Kent which overturned the jury's finding in favor of Poole & Kent on its delay claims. The trial court determined that Poole & Kent's judgment on its delay claims could not stand where there was no evidence of apportionment of damages between the parties. The general verdict and interrogatories submitted to the jury relating to the claims by Poole & Kent were in section B of the verdict and included the following eight questions which were answered by the jury as follows:

1. Do you find that Poole and Kent is entitled to recover against Federated on its mechanical lien claim?

    \_\_\_\_\_ Yes     X \_ No

2. Do you find that Poole and Kent is entitled to recover the unpaid contract balance from Federated?

    \_\_\_\_\_ Yes     X \_ No

\*   \*   \*

4. Do you find that Poole and Kent is entitled to recover against Federated on its delay claims?

     X \_ Yes    \_\_\_\_\_ No

If the answer to number 4 is "yes", answer the following question. If the answer to 4 is "no", proceed to number 6.

5. Do you find that Federated is entitled to recover from Austin–Westshore and Seaboard regarding Poole and Kent's delay claims?

    \_\_\_\_\_ Yes     X \_ No

6. Do you find that Poole and Kent is entitled to recover the unpaid contract balance from Austin–Westshore and Seaboard?

     X \_ Yes    \_\_\_\_\_ No

7. Do you find that Poole and Kent is entitled to recover against Austin–Westshore and Seaboard on its delay claims?

    \_\_\_\_\_ Yes     X \_ No

8. Which, if any, of the following parties caused, in whole, or in part, Poole and Kent's delay claims?

| | | |
|---|---|---|
| Austin-wrstshore and Seaboard | X Yes | \_\_\_\_\_ No |
| Federated | X Yes | \_\_\_\_\_ No |
| Developer | X Yes | \_\_\_\_\_ No |

As reflected above, the jury found that Poole & Kent was entitled to recover against Federated on its delay claim and also that Austin-Westshore and Seaboard, Federated and the Developer all caused, in whole, or in part, Poole & Kent's delay

claims. The trial court did not submit the judgment amounts claimed by Poole & Kent as the parties had stipulated and agreed on the damages amounts on the separate items of unpaid contract balance and delay damages. In addition, the jury verdict did not require that the jury address any issue of apportionment.

█ Finding no procedural bar to Federated's raising this issue in their JNOV motion,[10] we address the apportionment of liability issue. The jury verdict did not request the jury to apportion liability between the parties and only asked the jury to name the parties which caused, in whole, or in part, Poole & Kent's delay damages. If this issue is viewed as a challenge to the consistency of the jury's verdict,[11] Federated waived any objection to alleged inconsistencies in the jury's verdict by failing to raise the issue before the jury was excused. *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir.1974) (failure to object to the form of verdict and answers when announced to the jury in a 49(b) situation, waives a parties' later objections to any inconsistencies).

█ The trial court did not view this issue as one of inconsistency and instead granted Federated's JNOV motion on grounds of sufficiency of the evidence. The trial court overturned the judgment against Federated for Poole & Kent's failure to show evidence of apportionment of damages between the parties. We agree with the trial court's reasoning and cases set forth in the June 30, 1988 post trial order on this issue.

For Poole & Kent to recover from Federated it was required to show reasonably how much damage was due to Federated's conduct. *United States ex rel. Gray–Bar Electric Company, Inc. v. J.H. Copeland & Sons Construction, Inc.*, 568 F.2d 1159, 1161–62 (5th Cir.), *cert. denied*, 436 U.S. 957, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978). Poole & Kent's assertion that *Copeland & Sons* does not apply to this case where

Poole & Kent did not participate in the delay and had no authority over the Developer is without merit. Lack of participation, control or authority does not distinguish the cases cited in the trial court's post trial order or change the principles of law applicable to this issue. We affirm the trial court's ruling on this issue which entered an amended judgment against Poole & Kent on its claim for delay damages.

## III.

## CONCLUSION

In summary, we remand with instructions to reinstate the jury's finding of liability on Federated's negligence claim and associated damages. In addition, we remand with instructions to reinstate the jury's finding of *no* liability on Federated's contract claim. WE AFFIRM in part and REVERSE in part.

---

**10.** Federated moved for a directed verdict at the conclusion of all the evidence on Poole & Kent's delay claims on the grounds of insufficient evidence as a matter of law.

**11.** The jury's answers to questions 4, 5, 7 and 8 of the verdict seem inconsistent.