**Carl P. JOHNSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 90–1275.

District of Columbia Court of Appeals.

Submitted May 7, 1991.
Decided Oct. 8, 1991.

---

Janell M. Wolfe, Falls Church, Va., appointed by this court, filed a brief for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Roy W. McLeese III, Silvia Gonzalez and Peter R. Zeidenberg, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

PER CURIAM:

On October 31, 1988, appellant entered a pre-indictment guilty plea to the charge of assault with intent to kill while armed, D.C.Code §§ 22–501, –3202 (1989), and five weeks later, on December 7, 1988, was sentenced to a term of imprisonment of fifteen years to life. On March 30, 1990, appellant moved before the original trial judge to vacate his sentence and withdraw his plea pursuant to D.C.Code § 23–110 (1989) and Super.Ct.Crim.R. 32(e). He argued that he did not understand the nature of the mandatory minimum sentence [1] he might receive and that he had a viable self-defense claim. On appeal, appellant contends the trial judge erred in denying his motion without an evidentiary hearing. We vacate the order of denial and remand the case for further trial court consideration.

I

■ Appellant's claim not to have understood at the time of his plea that he would be incarcerated for a mandatory minimum term of at least five years presents little difficulty. The record clearly shows, as the trial court noted, that "at the time of the plea, Mr. Johnson acknowledged under oath that ... he understood the possible penalty for that offense," that "at no time during the plea proceedings did Mr. Johnson ... express any confusion about the sentence he could receive," and that "the Court specifically reviewed the possible sentence with both counsel and Mr. Johnson himself." *Inter alia*, this exchange took place:

[DEFENDANT'S COUNSEL]: I advised Mr. Johnson that the maximum penalty was life; that there was a mandatory minimum penalty five years in jail, and that the maximum mandatory—the maximum minimum penalty that this Court could impose would be fifteen years, so that he faces possible sentences of be-

---

1. Where a defendant commits a "crime of violence" while armed, *inter alia*, with any pistol or other firearm, as appellant was here, the defendant may be sentenced to imprisonment up to life, with a mandatory minimum sentence of at least five years, but not to exceed fifteen years. D.C.Code § 22–3202(a), (b) (1989).

tween fifteen years to life and five years to life and I've also—

THE COURT: Well, now on the charge solely assault with intent to kill while armed, what's the penalty he faces on that charge only?

[DEFENDANT'S COUNSEL]: That is a five year mandatory minimum to life with a maximum of fifteen years to life. And no Youth Act eligibility.

THE COURT: Do you understand that, sir?

THE DEFENDANT: Yes, sir.

On such a record, and absent any justification in the motion papers why these repeated explanations did not fully apprise appellant or why any alleged confusion did not lead him, still represented by counsel, to raise the issue far sooner, the trial court could conclude no "manifest injustice" existed to warrant a plea withdrawal on this ground.

## II

■ Appellant's assertion of a "viable claim of self defense" is another matter. At the plea hearing, the government's proffer was that on August 29, 1988, appellant approached a young man named Betterson in front of 1504 Galen Street, S.E., in the District. Appellant claimed Betterson owed him six hundred dollars. Appellant instructed Betterson to walk down the street. Betterson did so, but "turned and saw [the appellant] had a handgun in his hand and at approximately three ... feet away from [Betterson], the [appellant] fired ... the gun and shot [Betterson] in the neck." Betterson was paralyzed by the

injury he received. Betterson later identified appellant in a picture shown to him by a police officer as his assailant.

The § 23–110 motion was not the first time that some demurrer was raised relating to this account of the proffered event. At the sentencing hearing both defense counsel [2] and appellant himself [3] were interrupted and cut off by the trial court while addressing the court about the crime. The trial court's action in preventing both trial counsel and appellant from completing what they wished to say is troubling, given not only the right to allocute but the possible relevance of such information with respect both to the guilty plea and to the sentence.[4] *Warrick v. United States,* 551 A.2d 1332, 1334 (D.C.1988) (a defendant "must be afforded the right of allocution"); Super.Ct.Crim.R. 32(c)(1); D.C.Code § 23–103 (1989). Moreover, the standard of review for a withdrawal of a guilty plea prior to the imposition of sentence is whether "for any reason the granting of the privilege seems fair and just," *Gooding v. United States,* 529 A.2d 301, 306 (D.C.1987), (quoting *Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)), as opposed to the post-sentencing standard of "manifest injustice." Super.Ct.Crim.R. 32(e).

Some sixteen months later, appellant made his motion to withdraw the guilty plea. The trial judge, in denying the motion, found that appellant's self-defense claim stated in his motion supplied no facts "beyond his vague one line statement that he acted in 'self-defense.'" This was clearly an error. Appellant's motion stated that

---

**2.** Appellant's counsel averred that "Mr. Johnson did not shoot Mr. Betterson with an intent to kill him. And what he may have been acting in was kind of an—." At that point, the trial court cut in: "Counsel, I asked your client whether what the Government said happened did happen; and I asked him under oath. And he swore, under oath, that that's what happened, except that there were 18 hundred dollars involved. I will proceed to sentencing today, sir."

**3.** Appellant allocuted in part as follows: "I know, jive, like I did wrong and it was, jive, like—you know, everybody make a mistake. And I mean I was—I mean we all must pay for our mistakes. But this one was a mistake. It

was, jive, like, no other reason I would avoid it because this man jeopardized my life also, by pulling out a gun on me. And being as though he fled and, you know, went in his pocket, you know. And then what it was, I jive, like, went in my pocket. I'm not saying I didn't have—." Then the court cut in: "Mr. Johnson, we've discussed this. At sentencing, and under oath, you did not tell me that that happened, when I accepted your plea. Be that as it may, anything else you want to tell me?" Appellant did not explain any more about the crime itself.

**4.** Appellant makes no attack on the sentence itself.

he was innocent of the offense, that he had responded to armed threats by the complainant[5] and was prepared to present evidence that he fired his weapon in response to an armed assault by the complainant. In his accompanying affidavit, in describing why he believed that he was in fear of immediate bodily harm, appellant claimed that he "reasonably believed that the complainant was attempting to shoot me with a weapon."[6] This pleading cannot properly be characterized as a "one line statement."

The trial court also found that "as the Court was about to impose sentence, [appellant] for the first time suggested that he acted 'in self defense,' but supplied no explanation other than that self-serving statement." As already noted above, however, the sentencing transcript reveals that when appellant and his attorney apparently attempted to explain that appellant had a self-defense claim, the trial judge cut them off. Having witnessed his attorney being cut off by the judge who was about to sentence him, it is entirely reasonable, and understandable, that appellant did not pursue the same subject when he, too, was cut off by the judge, who was about to impose sentence on him.

■ A discretionary decision that is based upon an erroneous factual foundation cannot stand. *Johnson v. United States*, 398 A.2d 354, 364–65 (D.C.1979). While case law has set forth standards to determine when a hearing must be held on a § 23–110 motion, *see, e.g., Shepard v. United States*, 533 A.2d 1278, 1283 (D.C.1987), the application of those standards has a certain discretionary element and in any event there is no bar to a trial court, if so disposed, granting a hearing with respect to any such motion. Here, the trial court's order denying appellant's mo-

tion was clearly mistaken in two significant factual assertions.[7] We therefore set aside the order and remand the case for further consideration by the trial court.

*So ordered.*

---

5. The motion, signed by original trial counsel, stated that the defendant had notified trial counsel on the morning of the sentencing hearing that he had been acting in self-defense. The accompanying affidavit by appellant likewise stated that he had informed counsel that day that he wanted to withdraw the guilty plea to assert a self-defense claim.

6. Moreover, the government's proffer at the plea hearing did not render palpably incredible ap-

pellant's claim. This proffer, especially with the feature as quoted above that complainant started walking away and then turned toward appellant, was not necessarily incompatible with a claim that the complainant was also armed and turned to shoot appellant.

7. We need not reach the question whether the trial court's finding that appellant failed to offer a defense of his actions during the plea proceedings was supported by the record.