Eliahu MIZRACHI, Appellant,

v.

Beverly MIZRACHI, Appellee.

No. 93–FM–1597.

District of Columbia Court of Appeals.

Submitted Dec. 21, 1994.

Decided Sept. 27, 1996.

Eliahu Mizrachi filed a brief pro se.

Jonathan M. Dana and Stacy B. Seiden, Washington, D.C., were on the brief, for appellee.

Before TERRY, FARRELL, and RUIZ, Associate Judges.

TERRY, Associate Judge.

This is an appeal from the denial of a motion to modify the terms of an alimony and child support order. Appellant raises three issues: whether incorrect factual findings in the trial court's order require reversal, whether the court applied the correct legal standard in ruling on appellant's motion, and whether the court abused its discretion in denying the motion. We reverse.

I

The parties were married in 1962, entered into a separation agreement in 1984, and were divorced in 1985. The separation agreement, however, was not merged into the divorce decree. Under the agreement, Mr. Mizrachi was obliged to make monthly payments for the support of his two daughters until they reached the age of twenty-four,[1] as well as alimony payments to his ex-wife until her death or remarriage. In 1985 Mr. Mizrachi began to accrue substantial arrearages in these payments. These arrearages continued until 1989, when a consent order was entered requiring him to pay what was due. Unfortunately, Mr. Mizrachi did not meet his obligations under the 1989 order, and in May 1991 an amended consent order was entered. Mr. Mizrachi later moved to modify the 1991 order. The trial

1. Both daughters are now in their twenties. In 1981 the younger daughter, then nine years of age, developed a serious illness. The separation agreement also required Mr. Mizrachi to pay the costs associated with her medical treatment.

court denied that motion after a hearing, and Mr. Mizrachi noted the instant appeal.

Briefly summarized, Mr. Mizrachi's testimony at the hearing established that he had worked for several years as an agricultural consultant, developing and promoting new methods of irrigation technology. His last employer, from 1989 to 1992, was Virginia Agriculture Enterprises (VAE), which began to experience financial difficulties while he was working there and eventually went bankrupt. As a result of the bankruptcy, Mr. Mizrachi lost his job. Instead of seeking other employment, however, Mr. Mizrachi then decided to become a self-employed writer. He wrote a book and sent it to several publishing houses, but eventually they all rejected it. At the time of the hearing below, it still had not been accepted by any publisher. Mr. Mizrachi admitted that he had earned no income since 1992 and that he lived on personal loans from friends.

At the conclusion of the hearing, the court denied Mr. Mizrachi's motion to modify the consent order and reduce his support obligations. The court found that Mr. Mizrachi had made no good-faith effort to secure stable employment since 1992, that he had made a "decision to become an author ... of [his] own free will," and that this was "a life decision that served [Mr. Mizrachi's] interest more than it served the interest of the daughter and the former spouse." The court later entered a written order embodying its oral ruling.

## II

■ Mr. Mizrachi contends that the trial court committed reversible error by incorrectly stating in its order that he had been employed by the Department of Agriculture as a consultant and had voluntarily decided to leave that employment.[2] The court obviously erred in so finding, for the evidence was clear that Mr. Mizrachi worked not for

the Department of Agriculture, but for a private company that went bankrupt, causing him to lose his job. After the court made its erroneous finding, it went on to say:

> Mr. Mizrachi's decision to write for a living in lieu of pursuing other employment options smacks of voluntary impoverishment. This, of course, cannot serve as a basis for lowering his alimony and child support obligations.

This is the critical part of the court's ruling.

"Any order requiring payment of an amount of child support ... may be modified upon a showing that there has been a substantial and material change" in the supporting parent's ability to pay. D.C.Code § 30–504(a) (1993). This court, however, "has consistently held that a decrease in income due to the former husband's voluntary decision is insufficient to justify a reduction in support payments." *Hamel v. Hamel,* 539 A.2d 195, 201 (D.C.1988) (citing cases). Thus in the *Hamel* case we held that Mr. Hamel was not entitled to a reduction in alimony and child support payments because his "income-draining obligations ... were, in significant part, voluntarily assumed." *Id.* at 202. The legal principle underlying *Hamel* and similar cases appears to have been the basis of the trial court's decision to deny Mr. Mizrachi's motion. Unfortunately, however, that decision was based in significant part on the court's finding that Mr. Mizrachi had voluntarily quit his job at the Department of Agriculture—a job which in fact he did not have—and then had chosen to become an author instead of seeking other employment.

Mr. Mizrachi's prospects of becoming an author were not as elusive as the trial court seemed to think. He received a substantial advance (approximately $70,000) from a major publisher[3] and did in fact write a book, but the publisher, after several revisions, eventually decided not to accept it. There was no evidence that Mr. Mizrachi ever

---

2. The court's order said:
   Defendant's voluntary decision to leave his employment as a consultant with the United States Department of Agriculture to become an author is insufficient evidence of substantial and material change in circumstances in light of the continued needs of his dependents....

3. His original salary at Virginia Agriculture Enterprises had been $100,000, but that had been cut in half when the company began to have financial problems. Thus the publisher's advance was $20,000 more than his final salary at VAE.

turned down alternative employment or refused any opportunity to work. On the contrary, he stated that he applied for jobs in at least three book stores and in other retail establishments, though all of them paid considerably less than he had previously earned. If it were clear that Mr. Mizrachi knowingly, deliberately, and unreasonably pursued his desire to become an author and gave it precedence over his duty to support his children and his ex-wife, this would be quite a different case. But that is not what the evidence showed.

 A trial court has considerable discretion to decide the amount of alimony and child support payments, and its decision will not be overturned on appeal unless that discretion has been abused. *E.g., Brice v. Brice*, 411 A.2d 340, 344 (D.C.1980). But "[a] discretionary decision that is based upon an erroneous factual foundation cannot stand." *Johnson v. United States*, 597 A.2d 917, 920 (D.C.1991) (citation omitted). That is what we have here. The judgment is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

FARRELL, Associate Judge, concurring:

I concur in the reversal and remand of this case because the trial judge's written order was premised on a mistaken understanding that appellant had voluntarily quit his job as a consultant to become an author. No testimony rebutted appellant's assertion that he lost the job when the company went bankrupt. The motion to modify must therefore be reconsidered without reliance on a finding that appellant's decline in income stemmed from an original voluntary act.

This is not to say the judge lacked reason to be skeptical of appellant's claim of financial hardship beyond his control. Eliciting the truth about his efforts to support himself and his former wife and daughters in accordance with their agreement was difficult, to say the least, as his argumentative answers

and "emotional outbursts" left the trial judge convinced that he had "tried [his] best to torpedo this entire hearing." Appellant sought to portray himself as a somewhat hapless "man of ideas" who, while he had several books or proposals to write books in progress, was "never a business person," a "technician," an "agronomist" or "grower," and had never "taken any classes in computer science," hence could not be expected to utilize his business experience in marketing drip-irrigation on the Israeli model to gain any sort of equivalent employment. Instead, the only jobs he had actively sought were as a salesperson at local book stores or cashier at a grocery store and restaurant. The trial judge understandably was unimpressed by these efforts to meet his financial obligations. In my view, appellant's actions over the most recent three years since the hearing was held may be the best indicator of how much he should have been paying during this period and should pay in the future, assuming a modification is justified.*

---

* The parties agree that appellant's arrearages accumulated before he filed the motion to amend are unaffected by the motion.