*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0997

ABDULKADIR OSMAN, APPELLANT,

V.

FIRST PRIORITY MANAGEMENT, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2019-LTB-020806)

(Hon. Heidi M. Pasichow, Trial Judge)

(Submitted December 7, 2023                    Decided February 8, 2024)

*Laurence L. Socci* was on the brief for appellant.

*Michael J. Neary* was on the brief for appellee.

Before MCLEESE and DEAHL, *Associate Judges*, and THOMPSON, *Senior Judge*.

Opinion for the court by *Senior Judge* THOMPSON.

Dissenting Opinion by *Associate Judge* MCLEESE at page 16.

THOMPSON, *Senior Judge*: On July 30, 2019, appellant Abdulkadir Osman was informed by appellee First Priority Management ("First Priority," the management company for his employer/building owner Royal Operating Company) that he was being terminated from his position as building engineer. As

a condition of his employment, Mr. Osman had long occupied Unit 10 at the employer's building located at 3130 Wisconsin Ave. NW, and First Priority notified him that he had two months to vacate the apartment following his termination. After Mr. Osman refused to vacate, First Priority brought a complaint to recover possession of Unit 10. Following a jury trial from April 18, 2022, to April 22, 2022, the jury returned a verdict form finding that Mr. Osman was not terminated for discriminatory or retaliatory reasons and that he was "never a tenant in [U]nit 10," but also finding, in answer to a question designated as Question 7, that Mr. Osman was not required to vacate the Unit after his employment was terminated.

After the jury foreperson read the verdicts and the trial court dismissed the jurors, the court and counsel for the parties came to focus on what they discussed as the jury's "confusing" and "ambiguous" verdict on Question 7. The trial court suggested that the jury's answers to the first six questions provided a legal basis for a non-redeemable judgment of possession. However, rather than issuing judgment, the court requested briefing from the parties on what the jury's answers meant and what remedy was available.

First Priority filed a "Motion for Judgment" on June 3, 2022, asking the trial court to reconcile the jury's verdict in its favor. Following a hearing on September 16, 2022, the trial court issued a judgment of possession in favor of First Priority.

Appellant appeals from that order, contending that First Priority's Motion for Judgment was procedurally improper and that the trial court abused its discretion in entering the judgment of possession. For the reasons that follow, we vacate the judgment and remand for further proceedings.

## I. Background

The evidence at trial established that Mr. Osman had worked for Royal Operating Company, a family-owned business, for 38 years. Witnesses for First Priority testified that that Mr. Osman was terminated after it was discovered that he had breached the employer's trust in several ways. Mr. Osman denied wrongdoing, but also testified that the owner of his employer, its previous President Anne Maiatico, told him that he did not "have to ever worry about leaving Apartment 10." According to his testimony, there was another long-time employee of the employer who was permitted to stay in her unit after she was no longer an employee. Joseph Sellers—who married into the family of owners of Royal Operating Company, began working with the company in 2012, and was the company President at the time of trial—testified that he had no knowledge of any promise made to Mr. Osman that he could stay in his apartment for life and that he could not ask Ms. Maiatico about the matter because she was suffering from Alzheimer's disease. Mr. Sellers also testified that any such promise would have

required a decision by the company's Board of Directors and would have been put in writing.

Following trial, the jury returned unanimous verdicts. The verdict form had seven questions, which the jury answered as indicated below:

1) Do you find that Plaintiff has proven that it is more likely than not that Defendant was an employee of the owner of the building at 3130 Wisconsin Ave. N.W., Washington, D.C. 20016? **Yes.**
2) Do you find that the owner terminated Defendant's employment? **Yes.**
3) Do you find that Plaintiff proved that it is more likely than not Defendant was never a tenant in unit 10 of Plaintiff's or owner's? **Yes.**
4) Do you find that, at the time Defendant's employment was terminated, Defendant occupied unit 10 as a condition of his employment and that Defendant's occupancy was for the convenience of the owner of the building? **Yes.**
5) Do you find that Defendant proved it was more likely than not that the owner of the building fired Defendant for retaliatory or discriminatory reasons? **No.**
6) Do you find that Defendant occupied unit 10 at the time his employment was terminated? **Yes.**
7) Do you find that Defendant was required to vacate unit 10 after his employment was terminated by the owner of the building? **No.**

After thanking the jurors for their service and releasing them, the trial court asked the parties what they were "seeking . . . based on th[e] verdict." Counsel for First Priority suggested that the parties would have to "start over again," prompting the trial court to recognize that it had "not read . . . question [7] accurately" and to

remark that Question 7 was ambiguous in its reference to "after his employment was terminated." Stating that it was not clear that the jury had "precluded relief based upon the complaint" for possession, the trial court withheld judgment, directing the parties to submit briefs on the issue and stating that a later hearing would be required to determine the appropriate remedy.

On July 3, 2022, more than two months after the jury returned its verdicts, First Priority filed a pleading entitled "Motion for Judgment," in which it argued that the jury's answers to questions 1-6 could not "support a decision in favor of [Mr. Osman]" and asked the trial court to grant judgment as a matter of law in favor of First Priority. Mr. Osman opposed the motion, arguing that the time period for moving for judgment as a matter of law or moving to alter or amend judgment or for a new trial had passed. On September 16, 2022, the trial court held a hearing to discuss the parties' filings. At the hearing, the trial court noted that no judgment had yet been entered and that entry of judgment was a part of its responsibility, for which no motion was required.

On November 10, 2022, the trial court issued a written "Order Granting Plaintiff's Motion for Judgment." The trial court stated that it did "not believe [the jury's answers] to be legally inconsistent" but that it had discretion to reconcile them unless they were "'so logically and legally inconsistent' that reconciliation is impossible." Citing *District of Columbia v. Tulin*, 994 A.2d 788, 798 (D.C. 2010),

the court invoked its discretion to undertake reconciliation of a "'facially inconsistent verdict'" where the jury "'***may have*** misunderstood a key instruction'" (bold font and italics in the original).  Noting that the jury might have interpreted Question 7 as asking whether Mr. Osman was required to vacate the apartment "immediately" (an interpretation that the court had suggested during the discussion that ensued right after the jury was discharged, and that First Priority urged in its Motion for Judgment), and citing its "'broad discretion' to reconcile answers to questions posed to jurors" in the type of circumstance presented, the trial court explained that it would reconcile the jury's "facially unclear" answer to Question 7 "with the far-clearer answers to the other six questions" and issue a non-redeemable judgment in favor of First Priority.

The court ordered Mr. Osman to vacate Unit 10 within 90 days but stayed enforcement of the judgment pending resolution of this appeal.[1]

## II. Discussion

On appeal, Mr. Osman makes a two-pronged argument.  First, he argues that the trial court "improperly interpreted the jury's verdict[] when the jury answered a question on the Verdict Form inconsistent with other questions on the jury form."

---

[1] According to Mr. Osman's opposition to First Priority's Motion for Judgment, Mr. Osman at the time remained in Unit 10, paying rent at the "current market rate."

He argues that there is no evidence that the jury's answer to Question 7 was "'facially unclear'" as the trial court found, and no evidence that the jury misunderstood any instruction given by the court. He contends that under Super. Ct. Civ. R. 49(b), given the inconsistency in the jury's findings, the trial court should instead have ordered a new trial.[2] He asks this court to remand the case to the trial court for a new trial.

Second, Mr. Osman argues that it was procedurally improper for the trial court to grant First Priority's Motion for Judgment because the requirements of Superior Court Civil Rules 50 and 59 were not met. The motion was not proper under Rule 50, he argues, because no motion for judgment as a matter of law had been made before the case was submitted to the jury and thus no such "renewed" motion could be made within 28 days after the jury was discharged. *See* Super. Ct. Civ. Rule 50(a)-(b). Nor, he emphasizes, was the motion permitted under Rule 59(e) because it was not filed within 28 days after the entry of judgment.

---

[2] First Priority argues that Mr. Osman waived any argument that the jurors' findings were irreconcilably inconsistent, but we need not consider the issue of waiver because, as discussed *infra*, we accept the trial court's finding that the verdicts were not conflicting. In any event, we note that in the immediate wake of the verdicts, Mr. Osman's position was that the jury "said no," a remark by which he seemed to urge the court simply to give effect to the jury's determination that he was not required to vacate his unit. Thus, Mr. Osman did not, by failing to make an inconsistency objection immediately, waive or forfeit a claim about inconsistency; rather, he advanced the opposite claim.

Taking Mr. Osman's arguments in reverse order, we note that his analysis of First Priority's Motion for Judgment by reference to the foregoing rules does not quite square with either the procedural chronology or the substance of the motion.[3] As a matter of chronology (and impetus), the "motion" is best viewed as simply a responsive briefing, filed in response to the trial court's May 17, 2022, order "*Sua Sponte* Setting Motion's Schedule and a Motion's Hearing," wherein the court directed First Priority to file a motion and both parties to file memoranda addressing "what to do next" in light of the possibly inconsistent verdict.

In substance, the Motion for Judgment might more fairly be deemed in part a motion for judgment notwithstanding the verdict even though it did not comply procedurally with the requirements of Rule 50 (in that it did not renew a motion for a directed verdict). The motion argued that there was "no legal basis for the jury to decide that [Mr. Osman] does not have to vacate his unit" and that Mr. Osman had "no defenses to" First Priority's claim to possession of the unit. In substance, then, the motion was a motion for judgment notwithstanding the verdict, in that it requested that the trial court, viewing the evidence in the light most favorable to the nonmoving party, direct judgment because "the evidence is so clear that

---

[3] "The nature of a motion does not turn on its caption or label, but rather its substance." *Nuyen v. Luna*, 884 A.2d 650, 654 (D.C. 2005); *see also id.* at n.3 (explaining that we look at the relief a filing seeks when determining what rule it best fits).

reasonable men could reach but one conclusion." *Bauman v. Sragow*, 308 A.2d 243, 244 (D.C. 1973). But we have said that "[a] judgment notwithstanding the verdict is proper only in 'extreme' cases." *Oxendine v. Merrell Dow Pharmas., Inc.*, 506 A.2d 1100, 1103 (D.C. 1986), i.e., cases in which "no reasonable person, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party." *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 363 (D.C. 1993) (internal quotation marks and citations omitted). For the reasons we discuss below (related to Mr. Osman's argument about the improper interpretation of the jury's verdict), we conclude that this was not such an extreme case. We conclude that it was not necessarily the timing of First Priority's Motion for Judgment that foreclosed the trial court from entering judgment in its favor notwithstanding the verdict.[4] Rather, viewing the evidence in the light most

---

[4] Indeed, we have emphasized the "crucial" distinction between (i) general verdicts and (ii) special verdicts in the form of jury answers to interrogatories, explaining that the rule that "if the jury rendered inconsistent general verdicts, failure to object timely waives that inconsistency as a basis for seeking retrial" "may not apply to special verdicts"; rather, "inconsistent special verdicts . . . may support a motion for a new trial even if no objection was made before the jury was discharged." *President & Dirs. of Georgetown College v. Wheeler*, 75 A.3d 280, 289 (D.C. 2013) (internal quotes omitted); *see also Est. of Underwood v. Nat'l Credit Union Admin.*, 665 A.2d 621, 647-48 (D.C. 1995) (suggesting that the waiver rule does not apply when a verdict "is so ambiguous . . . that it . . . would leave the [c]ourt in the position of having no alternative but to guess at what the jury intended" and acknowledging that there may be cases where an inconsistency is "discernible only on reflection," that "might well be exempt from the waiver rule"); *accord*, *Pierce v. S. Pac. Transp. Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987)

favorable to Mr. Osman (the ostensibly prevailing party in light of the jury's "no" answer to Question 7), we conclude that what foreclosed judgment in First Priority's favor notwithstanding the verdict was that in light of the testimony and arguments presented at trial, the jury could reasonably reach a verdict in Mr. Osman's favor in response to Question 7 even while finding in First Priority's favor on the other verdict-form questions.

The jury's answer to Question 7 may have been facially unclear to an observer who had not heard or was not apprised of all the evidence in the case, or may have seemed to that same observer to be inconsistent with the jury's other findings. Upon our review of the testimony and arguments of counsel, however, we think a reasonable juror could have rejected Mr. Osman's discrimination claim and concluded that Mr. Osman was never a tenant of Unit 10, but still concluded that he was not required to vacate Unit 10 after the termination of his employment. That is because, as recounted above, the jury heard Mr. Osman's testimony that one of the owners of Royal Operating Company—the company's former President Anne Maiatico—had told him that he did not "have to ever worry about leaving

---

("[A] motion for directed verdict need not be a condition precedent for a motion for JNOV when the challenge is to the consistency of the answers under a . . . special verdict, and not to the sufficiency of evidence supporting a general verdict."); *Massey v. Rusche*, 594 S.W.2d 334, 337 (Mo. Ct. App. 1980) (reasoning that "[w]hat these verdicts would be could not have been known to anyone until they were returned, so that up to that point there was nothing to preserve as error," such that waiver was "inapposite under the[] circumstances").

Apartment 10." Mr. Osman further testified that he had saved the company "millions" of dollars over the course of his employment by suggesting money-saving fixes. Witnesses for the defense also told the jury about accommodations that had been made to enable Mr. Osman's family to stay in Unit 10 even as it grew, including by permitting a wall to be removed between Units 10 and 11 to permit the family to expand into Unit 11, renting nearby Unit 12 for use by Mr. Osman's sons, and allowing the Osman family to use both additional units for "reduce[d]" rents. Although First Priority's witness Joseph Sellers, the President of Royal Operating Company at the time of trial, did not think the company would have promised Unit 10 to Mr. Osman for life, Mr. Sellers had worked for the company for only a fraction of the time Mr. Osman had been a company employee, and he (Mr. Sellers) was unable to confirm with Ms. Maiatico whether she had made such a promise. And although Mr. Sellers opined that any such promise would have been in writing, the jury was not given an instruction that might have required them to reject Mr. Osman's apartment-for-life testimony (such as an instruction that a promise involving real property would not have been valid or enforceable if not memorialized in writing).

In closing argument, Mr. Osman's counsel highlighted Mr. Osman's testimony about an oral agreement with the owner that "he was given Apartment 10 for life" and emphasized that First Priority "provided no evidence to prove

otherwise."[5]  We conclude that although the jury was not compelled to credit Mr. Osman's account, it was entitled to believe his account, which was bolstered by his additional testimony about another longtime Royal Operating Company employee who was allowed to live in one of the company's apartments for life, as well as by Mr. Sellers's testimony that the family-run company "treat[ed] everyone like family."  Thus, the jury could have determined that Mr. Osman was entitled to stay in his unit for life even while finding that he had not been wrongfully terminated and had never been a tenant.[6]

Thus, in our view, to those who had heard the testimony and arguments, the jury's answer to Question 7 was not necessarily facially unclear.  But this court's role is not to second-guess whether the jury's findings could be viewed as conflicting.  We explained in *Tulin* that "[t]he reviewing court, upon reviewing the

---

[5] Thus, First Priority's argument that "the sole defenses Osman put before the jury were whether he was actually a tenant and whether the building owner terminated him for discriminatory or retaliatory reasons" is incorrect, as was First Priority's counsel's argument to the trial court that the parties "didn't give [the jury] a basis for" a conclusion that Mr. Osman could stay in his Unit.  Counsel for First Priority also argued to the trial court that the jury "did not validate [Mr. Osman's] defenses," but as Mr. Osman's counsel replied, explicitly doing so was "not part of the verdict form."

[6] *Cf. D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 869 (D.C. 2009) (citing arguments presented to the jury "that would apply to [defendant] DCHA, but not to [co-defendant] Quality Elevator" in rejecting argument that "no reasonable jury . . . could have found that DCHA was negligent but Quality Elevator was not.").

jury's answers, *must not determine whether the findings may be viewed as conflicting*, but rather, must ascertain if there is any reasonable basis upon which the answers may be reconciled." 994 A.2d at 799[7] (italics added) (quoting 75 B. Am. Jur. 2d *Trial*, § 1586, at 380 (2007)); *see also Tulin*, 994 A.2d at 802 ("We do not determine whether the findings may reasonably be viewed as conflicting; to the contrary, the question is whether there is any reasonably possible basis upon which they may be reconciled." (quoting *Luna v. S. Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex. 1987)); *see also Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973) ("[T]he test to be applied in reconciling apparent conflicts between the jury's answers is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted[.]"). We focus therefore on whether the trial court's reconciliation of the jury's interrogatory answers was "a reasonably possible basis" and a "logical and probable" basis for a reconciliation.[8]

---

[7] *But see id.* at 800 (observing nevertheless that the jury's findings in *Tulin* were "not 'ineluctably inconsistent' (or indeed, inconsistent at all)").

[8] The trial court rightly made an effort at reconciliation. We have said that "[i]f the answers to [general] verdict questions can be reconciled on any theory, the verdict will not be disturbed." *Tulin*, 994 A.2d at 798-99 (quoting 75 B. Am. Jur. 2d *Trial*, § 1586, at 378-79 (2007)); *see also id.* at 798 ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved in that way." (brackets and internal quotation marks omitted)); *Bowler v. Stewart-Warner Corp.*, 563 A.2d 344, 348 (D.C. 1989) (same); *see also Pierce*, 823 F.2d at 1370 ("A reviewing court must uphold a verdict even if it finds only 'slight' or 'minimal' facts to support a jury's findings[.]").

We conclude that trial court's reconciliation of the jury's interrogatory answers was neither "a reasonably possible" nor a "logical and probable" basis for reconciling the jury's answers. The trial testimony about the instruction to Mr. Osman that he had sixty days post-termination to vacate the apartment was undisputed, and First Priority's counsel, who told the jurors in her opening statement that First Priority would ask them at the close of the evidence to award First Priority "a judgment for possession of Unit 10," argued in closing that the jury's completion of the verdict form should recognize that Mr. Osman was "grasping at straws to stay in an apartment that he occupied as an employee" but that he "has to leave." In light of all the foregoing, an interpretation that the jury was focused on (or thought it needed to decide through its ultimate verdict) whether Mr. Osman had to leave his unit immediately after termination is not plausible.[9] We therefore are constrained to conclude that the trial court abused its discretion when it reconciled the jury's answers, and entered a judgment for

---

[9] *Cf. Warlick v. Cross*, 969 F.2d 303, 308 (7th Cir. 1992) ("Warlick's second alternate interpretation of the answer is unacceptable because it has no basis in the evidence" in that the "jury was not presented with any evidence [or argument] to support the proposition" in question).

We also discern nothing in the record to indicate that the jury misunderstood any instruction given by the court. *Cf. Tulin*, 994 A.2d at 799 ("[A] jury's facially inconsistent verdict does not require a new trial if the inconsistency can fairly be attributed to the jury's misunderstanding of the court's instructions."). Neither the parties nor the trial court identified any possibly misunderstood instruction.

possession in favor of First Priority, on that basis. By contrast, an explanation focused on the Mr. Osman's apartment-for-life claim, which is grounded in Mr. Osman's testimony and the arguments by his counsel, is quite plausible. Unlike the theory about the jury's being focused on whether Mr. Osman was required to vacate immediately, the apartment-for-life theory, which the trial court appears not to have taken into account, was both "supported by the evidence" and "argued on behalf of" Mr. Osman. *Tulin*, 994 A.2d at 801. However, as we cannot say that this is the only reasonable interpretation of the jury's verdict, we will not impose our own reconciliation.

Instead, we conclude that vacatur of the judgment, and a remand for the trial court to reconsider the appropriate relief without reliance on the interpretation we have determined is implausible, are warranted. *See Mizrachi v. Mizrachi*, 683 A.2d 137, 139 (D.C. 1996) (reversing and remanding for further proceedings after the trial court based its decision to not lower alimony and child support payments on an interpretation of the defendant's conduct—voluntary impoverishment—that could not be squared with what the evidence showed); *see also id.* (Farrell, J., concurring) (highlighting the importance of permitting the trial court to reconsider its order without reliance on a "mistaken understanding"); *see also Thanos v. District of Columbia*, 109 A.3d 1084, 1093-95 (D.C. 2014) (holding that the trial court erred in determining that it was without authority to order income

disgorgement as relief, and remanding the case for the trial court to consider anew whether to order that relief). If, on remand, the trial court determines not to adopt the jury's having credited Mr. Osman's apartment-for-life claim as its interpretation of the jury's answer to Question 7, and if no other plausible interpretation is identified, the court in its discretion may order a new trial. The trial court may consider whether Osman has forfeited any claim to a judgment in his favor where a retrial was the relief he has requested from this court.

For the foregoing reasons, the judgment of the Superior Court is vacated and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

MCLEESE, *Associate Judge*, dissenting: The court vacates the judgment of the Superior Court and remands for further proceedings. I would affirm, and I therefore respectfully dissent.

The trial court concluded that the jury's answers to the questions on the verdict form were facially unclear but not irreconcilable. The trial court reasoned that (1) the final question on the verdict form (asking whether Mr. Osman was required to vacate the apartment at issue after his employment terminated) was unclear as to timing; and (2) the jury's negative answer to that question may simply have reflected the jury's conclusion that Mr. Osman was not required to

vacate the apartment *immediately* after his employment terminated. The trial court is required to reconcile apparently inconsistent verdicts if that is reasonably possible. *District of Columbia v. Tulin*, 994 A.2d 788, 798 (D.C. 2010). This court owes deference to the trial court's "broad discretion in attempting to harmonize [seemingly] inconsistent answers" on verdict forms. *Id.* at 799 (internal quotation marks omitted). In my view, the trial court did not abuse its broad discretion in reconciling the jury's answers in the way the trial court did.

In holding to the contrary, the court relies on the idea that the jury's answer to the final question may instead have reflected a determination that First Priority had promised Mr. Osman that he could live in the apartment for the rest of his life, even after he was no longer employed by First Priority. *Supra* at 10-15. I tend to agree that that is another possible way of reconciling the jury's answers to the verdict form. Nevertheless, I would not reverse the trial court on that basis. In opposing First Priority's post-verdict motion for judgment, Mr. Osman did not suggest that idea. "[W]e hardly can say that the Superior Court abused its sound discretion by failing to consider [an argument] that [Mr. Osman] did not raise." *D.C. Metro. Police Dep't v. Fraternal Ord. of Police/Metro. Police Dep't Lab. Comm.*, 997 A.2d 65, 74 (D.C. 2010) (citations and internal quotation marks omitted).

Mr. Osman also did not raise that idea in this court. "We ordinarily do not consider points that a party did not squarely present on appeal." *Smith v. United States*, 306 A.3d 67, 76 (D.C. 2023). I see no adequate reason to depart from our ordinary practice in this case. Moreover, on the rare occasions when we have departed from that general practice, we have been careful to avoid procedural unfairness, by directing supplemental briefing so that the parties have an opportunity to address the issue that the court is raising sua sponte. *Id.* At a minimum, the court in my view should direct supplemental briefing before reversing the trial court on a ground that was raised neither in the trial court nor in this court.

For the foregoing reasons, I respectfully dissent.